## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 5:16-CR-320 (DNH) |
| v. | **TRIAL MEMORANDUM OF THE UNITED STATES** |
| STACEY J. LAPORTE, JR., | |
| Defendant. | |

Dated: June 2, 2017

Respectfully submitted,

RICHARD S. HARTUNIAN
UNITED STATES ATTORNEY

BY:   */s/ Lisa M. Fletcher*
      */s/ Sahar L. Amandolare*
      Lisa M. Fletcher
      Sahar L. Amandolare
      Assistant United States Attorneys
      Bar Roll Nos. 510187
                    520259

I.    **STATEMENT OF THE CASE**

   a.   Jury selection is scheduled to commence at the discretion of United States District Judge David N. Hurd on June 12, 2017 in Utica, New York.

   b.   Defendant Stacey J. LaPorte, Jr. is detained pending trial.

   c.   A jury trial has not been waived.

   d.   The estimated duration of trial is approximately ten days.

   e.   The defendant is represented by Attorneys Randi Juda Bianco and Martin P. Wolfon.

   f.   The six-count Second Superseding Indictment charges the defendant with: (1) Conspiracy to Sexually Abuse a Child, in violation of Title 18, United States Code, Sections 2251(a) and (e); (2) Sexual Exploitation of Children, in violation of Title 18, United States Code, Section 2251(a), and (3) Receipt of Child Pornography, in violation of Title 18 United States Code, Section 2252A(a)(2)(A).

II.   **RECPRICROCAL DISCOVERY AND AFFIRMATIVE DEFENSES**

   The government has requested reciprocal discovery from the defense.  No such discovery has been produced.

   The defendant has not given notice of his intent to rely on any defense of entrapment, mental incapacity, duress, or alibi.  Therefore, to the extent the defendant may attempt to rely on any such defense, the Government reserves the right to object and to seek to have the defendant precluded from asserting such defenses.

III.  **STATEMENT OF FACTS**

   A full summary of the Statement of Facts was presented both in the Government's previously-filed response to the defendant's omnibus motions, and in the Government's pending motions *in limine*.  For the sake of brevity, they will not be repeated here.

IV.   **EVIDENTIARY ISSUES**

A.    **Display of Child Pornography**

The Government intends to introduce and display sexually explicit images of V-1 in support of Counts 1, 3, and 4, of V-2 and V-3 in support of Count 5, and, in support of Count 6, sexually explicit images of an unknown infant that were received by the defendant through a messaging service.

The Government intends to display these images for the witness, Court, parties, and jury, by means of the Court's computer monitors.  Even were the defendant to stipulate to the nature of these files (which he has not), the Government "is entitled to prove its case free from any defendant's option to stipulate the evidence away."  *Old Chief v. United States*, 519 U.S. 172, 189 (1997).

The probative value of the child pornography exhibits is not substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.  Various courts, including the Second Circuit, have held that the government is entitled to introduce evidence and publish to the jury images of child pornography, even where the defendant has stipulated that they are child pornography.  *See United States v. Polouizzi*, 564 F.3d 142, 152-53 (2d Cir. 2009) (holding that Government was entitled to show images to the jury notwithstanding fact that defendant stipulated that images were child pornography ); *United State v. Swell*, 457 F.3d. 841, 844 (9th Cir. 2006) (reversing district court order precluding publishing child pornography to jury because the "defendant's objection to evidence based on unfair prejudice…generally cannot prevail over the government's choice to offer evidence showing guilt and all the circumstances surrounding the offense") (quoting *Old Chief*, 519 U.S. at 183); *United States v. McCourt*, 468 F.3d 1088, 1091 (8th Cir. 2006); *United States v. Campos*, 221 F.3d 1143, 1149 (10th Cir. 2000); *United States v.*

*Dodds*, 347 F.3d 893, 897-99 (11th Cir. 2003).  *But see*, *United States v. Cunningham*, 694 F. 3d 372 (3d. Cir. 2012)(conviction reversed where trial court did not view the images prior to conducting Fed. R. Evid. 403 balancing test and allowed the images to be introduced over defendant's objection).

The Government is requesting that the display of the sexually explicit images be limited to the court, the witness, the jury, and the parties, and that they not be displayed to the general audience when published though the Court's computer monitors.

This procedure does not impose any meaningful impediment to the public's access to the proceedings, and even if it were considered to be some minor infringement upon the right to a public trial, it would be justified.  *United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012) ("The public trial guarantee is not absolute, however. '[It] may give way in certain cases to other rights or interests, such as . . . the government's interest in inhibiting disclosure of sensitive information.'") (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984)).  This procedure is an appropriate balance of the need for a public trial with protecting the sensitive nature of the images and mitigating the harm to victims that attends repeated public dissemination of their victimization. *See United States v. Killingbeck*, 616 Fed. App'x. 14, 16 (2d Cir. 2015) (finding no plain error in the Court's decision not to display child pornography on monitors visible to courtroom spectators, finding that the restriction was narrow, and that "[e]ven assuming that restricting the display of trial exhibits to the courtroom audience constitutes a partial 'closure' for Sixth Amendment purposes, the government presents substantial reasons for doing so-limiting the continuing harm to victims of child pornography."); *United States v. Toschiaddi*, 2009 WL 2151149, *8 (N-M. Ct. Crim. App. July 16, 2009) (holding that military judge did not violate Sixth Amendment right to a public trial "when [the judge] devised a system whereby the images of child pornography were

4

restricted to computer monitors visible only to the testifying witness, the trial defense and Government counsels', the military judge, and the appellant").

The burden on the party seeking to limit access to a judicial proceeding varies according to how extensive the requested closure will be. "When limited closure . . . is at issue, the prejudice asserted need only supply a 'substantial reason' for closure. When the closure sought is total or nearly so, the district court must find the prejudice to be 'overriding.'" *United States v. Doe,* 63 F.3d 121, 129 (2d Cir. 1995).[1]

Applying this test, the Court of Appeals, in *United States v. Ledee*, 762 F.3d 224 (2d Cir. 2014), held that a trial court did not violate a defendant's Sixth Amendment right to a public trial by excluding from the courtroom during testimony of a minor victim of sexual abuse all persons not directly involved in the trial, including the defendant's parents. *Id*. at 228-231.

The Government maintains that precluding images of child pornography from being publicly displayed during trial is not a "closure" implicating the Sixth Amendment public trial right. No one will be denied access to any portion of the trial proceedings. Rather, spectators (if any) would be denied only the ability to see a discrete set of exhibits depicting child pornography. The Government could show the images of child pornography to the witness, the jury, and parties in paper form. If we did, because federal district courts typically do not publish paper exhibits to trial spectators, those spectators would be in the same position with respect to the images of child pornography as they will be with the audience monitors turned off.[2] Absent denial of some specific

---

[1]      As an example of a "limited closure," the *Doe* Court cited *Woods v. Kuhlmann*, 977 F.2d 74 (2d Cir. 1992), in which, "to allay a government witness's fear of retaliation, the trial court excluded only members of defendant's family from the courtroom and only for the duration of the witness's testimony." 63 F.3d at 129.

[2]      To effectuate this request, the monitors on counsel table should be turned so that only the parties may view them.

and legally-viable claim of access by the press or a spectator to paper copies of exhibits, *see, e.g.,* *Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013) (discussing public right of access to exhibits used in a closed contempt proceeding), there is no Sixth Amendment violation.

Under the *Waller* test, an order precluding the images of child pornography from being displayed to the general public advances a substantial and overriding interest – the protection of victims of childhood sexual abuse.  As the Supreme Court has recognized, victims of childhood sexual abuse are further victimized by the continued distribution and viewing of images of their abuse.  *See Paroline v. United States*, ___ U.S. ___, 134 S. Ct. 1710, 1717 (2014) (crediting victim's explanation that "[e]very day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them—at me—when I was just a little girl being abused for the camera."); *Osborne*, 495 U.S. at 111 ("[T]he materials produced by child pornographers permanently record the victim's abuse.  The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come.").  Congress also has recognized the importance of limiting dissemination and viewing of existing child pornography.  *See* 18 U.S.C. § 2252A(a)(5)(B) (criminalizing "access[ing] with intent to view . . . material that contains an image of child pornography"); § 3509(m) (requiring that government or court maintain possession of property or material that constitutes child pornography in any criminal proceeding and requiring that courts deny defense discovery requests for reproduction of any such material).  It would be inconsistent with this understanding of the harm that child pornography inflicts on victims to project images of sexual abuse of minor victims in federal courtrooms.[3]

---

[3]      It also would be perverse to enable a child pornography defendant to further humiliate his victims by affording him a constitutional right to publish images of the sexual abuse of the victims to courtroom spectators.

Moreover, the Government's request is narrowly tailored to the above-described interest. The only limitation is on the display of child pornography to spectators.  There is no First Amendment right to possess such material, see *Osborne*, *supra*, and no legitimate need for a spectator to view material that constitutes child pornography under 18 U.S.C. § 2256(8).[4]

Accordingly, we request that the court make a record of findings, as outlined above, supporting the prohibition on spectators viewing the child pornography exhibits, and accordingly order that, only during the display of child pornography, the monitors to the audience be turned off, and the monitors on counsel table be turned to allow only the parties to view the child pornography exhibits.

**B.    Redaction of Transcript**

This case involves child sex crimes victims whose identities are subject to privacy protections mandated by federal law.   18 U.S.C. § 3509(d); see also Local Rule, Criminal Procedure, § 1.3.  While the Government intends to use the names of the children during our presentation to the jury, we are requesting that the record and transcription of the proceedings identify each of the child victims, V-1, V-2, V-3, V-4, and B.L., only by their initials.

**C.    Interstate Nexus**

The substantive counts of the indictment contain a federal nexus element.

The Government can prove the interstate nexus element in one of three ways, and while the Government need establish only one, our evidence will prove all three.

---

[4]    *See United States v. Troup*, 2012 WL 3818242 (N.D. Ind. Aug. 31, 2012) at *6 (granting joint government/defense request not to display images to courtroom spectators because "[t]here is no particularly compelling reason why the public would need to see child pornography in the gallery during trial, and it would be detrimental to the minors depicted therein to put their victimization on display").

First, this element is satisfied if the jury finds that an image of child pornography was actually transmitted in and affecting interstate or foreign commerce.  Here, the Government will prove that images involved in each of the offenses charged were transmitted to the defendant, using a chat messaging service.  That transmission is sufficient to sustain the Government's burden of proof regarding interstate nexus.  *United States v. Harris*, 548 Fed. App'x. 679, 682 (2d Cir. 2013)(use of the internet satisfies the "in commerce" element); *United States v. MacEwan*, 445 F.3d 237 (3d Cir.), *cert. denied* 549 U.S. 883 (2006) ("Regardless of the route taken … we conclude that because of the very interstate nature of the Internet, once a user submits a connection request to a website server or an image is transmitted from the website server back to user, the data has traveled in interstate commerce.").

Second, and in the alternative, the Government can prove interstate nexus by showing that the defendant knew or had reason to know that the visual depiction would be transported or transmitted in or affecting interstate commerce.  Here, the Government will prove that the defendant requested that the produced images be sent to him over a chat messaging service, and as such knew and had reason to know that they would be so transported, meeting this second alternative method of establishing an interstate nexus. *Id.*

Third, and also alternatively, the interstate nexus requirement is satisfied when the evidence establishes that the material on which an image was produced or stored had previously moved from one state to another, or between the United States and a foreign country.  Here, the Government will produce the devices on which the child pornography was produced and/or stored, and the manufacturer stamp indicating that the devices were manufactured in outside the state of New York, which is also sufficient to meet the interstate nexus element.  *United States v. Holston*, 343 F.3d 83 (2d Cir. 2003)(upholding the "materials-in-commerce prong of § 2251); *United States*

*v. Koch*, 625 F.3d 470 (8th Cir. 2010)(manufacturer's labels sufficient to prove place of manufacture); *United States v. Fox*, 357 Fed. App'x. 64, 65 (9th Cir. 2009)(same).

The Government does not have to prove that the defendant personally transported the material across a state line, or that the defendant knew that it had previously crossed a state line. *See United States v. Guagliardo*, 278 F.3d 868 (9th Cir. 2002) (upholding conviction where jurisdiction was premised on the defendant having copied child pornography onto computer disks that had been made overseas).

The Government will produce the devices and/or photographs of the devices to show the manufacturer inscription that proves that the material necessarily moved in interstate and foreign commerce. Fed. R. Evid. 902(7) (Inscriptions, signs, tags and labels which indicate workmanship, control or origin are self-authenticating.) *See also United States v. Fox*, 357 Fed. App'x. 64, 65 (9th Cir. 2009) ("Fox also challenges his § 2251(a) conviction on the ground that the government failed to present sufficient evidence that the cameras Fox used to produce child pornography had traveled in interstate or foreign commerce. Introducing the cameras' country-of-origin labels, which indicated they had been manufactured overseas, sufficed to prove the cameras had moved in foreign commerce."); *United States v. Koch*, 625 F.3d 470 (8th Cir. 2010) ("Nor did the court abuse its discretion in admitting testimony by agent Morris that Koch's computer and flash drive were each labeled as having been manufactured in China. While the better practice may be to prove the place of manufacture through a business record, we have previously rejected the claim that a manufacturer's inscription on a product is inadmissible hearsay.) *See also United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir.1987); and *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1991) (Inscription "Garnika, Spain" on firearm was self-authenticating and because firearm was seized in California, evidence was sufficient to establish that firearm had moved in

foreign commerce. "[T]he Federal Rules of Evidence do not require extrinsic evidence of authenticity for inscriptions, signs, tags or labels which indicate workmanship, control or origin. Fed.R.Evid. 902(7). Thus, evidence consisting of a manufacturer's inscription on a firearm is not an assertion subject to the hearsay rule. The district court did not abuse its discretion in admitting the firearm over Appellant's hearsay objection and in allowing the government to argue that the inscription on the gun indicated that it had been manufactured in Spain.")

A manufacturer's point of origin label is not hearsay. [5] *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1991). As the court wrote in *Alvarez*:

> In *United States v. Snow*, we held that a red tape imprinted with the defendant's name and affixed to a briefcase in which a gun was found was not hearsay, as the inscription did not constitute an assertion "from which the truth of the matter asserted is desired to be inferred," but rather was a "mechanical trace" and a type of circumstantial evidence not excludable under the hearsay rule. For the same reason, we believe that a similar inscription on the firearm itself does not constitute hearsay. An inscription placed on a firearm by the manufacturer is similarly a mechanical trace and not a statement for purposes of Federal Rule of Evidence 801(c).

*Id.* (internal citations omitted). This was put into practice in a child pornography case where the defendant had been charged with possession of child pornography that was produced using materials that had moved in interstate or foreign commerce. There, the Government proposed to satisfy the interstate nexus by introducing the computer hard drive on which the child pornography images were found. The hard drive bore a trade inscription that read "Product of Malaysia," and the court found that the trade inscription was self-authenticating under F.R.Evid. 902(7). It agreed with *Alvarez* and *Snow* that the trade inscription was merely a mechanical trace, and therefore

---

[5]      And even if it were, it would be admissible under Fed. Rule Evid. 807, permitting hearsay evidence when (1) the statement has equivalent circumstantial guarantees of trustworthiness, (2) it is offered on a material fact (3) it is more probative on the point than any other evidence one could obtain through reasonable effort and (4) admitting it will best serve the purposes of the rules and the interests of justice.

shouldn't be precluded as hearsay. This was particularly true, the court held, where "[t]he inscription of origin is required by law[6] and should be highly reliable." *United States v. Brown*, 2009 WL 2090193 (S.D.Ind. 2009).

Likewise, the interstate or foreign commerce nexus can be established by showing that the material on which the depictions were *stored* (as opposed to the device on which they were originally produced) was "produced using materials that had been shipped and transported in and affecting interstate or foreign commerce."   18 U.S.C. §§ 2251(a) and 22522A(a)(2)(A).   This prong of the statute is satisfied by showing that the defendant possessed, copied, or downloaded images onto a computer or other form of electronic media that was not produced in the state of New York.   *United States v. Schene*, 543 F.3d 627, 639 (10th Cir. 2008) ("each 'image of child pornography' had been copied or downloaded to Schene's hard drive in one capacity or another, and was therefore 'produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce'" within the meaning of 18 U.S.C. § 2252A(a)(5)(B)); *United States v. Guagliardo*, 278 F.3d 868 (9th Cir. 2002) (upholding conviction where jurisdiction was premised on the defendant having copied child pornography onto computer disks that had been made overseas, holding that the defendant "'produced' images of child pornography with materials

---

[6]     Federal law requires point of origin labeling on all products imported into the United States.  Title19 U.S.C § 1304(a) states:

> [E]very article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such a manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article.

This statute levies a duty on the importer of any article that is not marked as required. 19 U.S.C. §1304(i).  The law also imposes criminal penalties on any person who alters or defaces a point of origin marking with the intent to conceal the information. 19 U.S.C. § 304(l).  This law came into effect in the 1930s.  Where the law requires point of origin labeling, the self-authentication rule for such labeling is appropriate.

from foreign commerce when he copied the images onto the disks") citing *United States v. Lacy*, 119 F.3d 742 (9th Cir.1997) "(holding that images were "produced" when they were downloaded onto a computer)"; *United States v. Angle*, 234 F.3d 326, 341 (7th Cir.2000) "(holding that visual depictions "are 'produced' when computer equipment, including computer diskettes, are used to copy the depictions onto the diskettes")", *cert. denied*, 533 U.S. 932, 121 S.Ct. 2556, 150 L.Ed.2d 722 (2001).  *Cf. United States v. Ramos*, 685 F.3d 120, 133 (2d Cir. 2012)(agreeing with *Schene* and similar cases, and holding that where defendant created morphed child pornography in his home, with no evidence the images ever traveled, or were meant to be distributed, in interstate commerce, interstate nexus was nevertheless satisfied as "that the act of using computer equipment manufactured outside the United States to produce child pornography meets the jurisdictional requirement of § 2252A(a)(5)(B).")  Here, again, as the material from which the child pornography was recovered was not manufactured in New York, this requirement is met.

**D.     Testimony Regarding Examinations of Electronic Devices**

The Government anticipates calling NYSP Forensic Analyst Deborah Jasinski who performed forensic examinations on several of the recovered devices in this matter. Ms. Jasinski will not be called as an "expert" witness, within the traditional meaning of that phrase, but instead, will be called upon to testify to facts.  The testimony will focus on the evidence she found on the devices after retrieving it through forensic tools.  Such testimony is akin to the testimony of any other officer who finds evidence pursuant to a search warrant.  All of the recovered evidence has been available to the defendant throughout the pendency of the case, and much of it has been turned over or reviewed with counsel in person.  Out of an abundance of caution, the Government

has furnished the defendant with a copy of Ms. Jaskinski's curriculum vitae, and provided "expert" notice.[7]

The physical evidence itself has been available for defendant's inspection throughout this case.  No request for an independent inspection has been made.

Additionally, the forensic review conducted by Ms. Jasinski was performed on a forensic "mirror" image of the devices she examined.  This is not a basis for challenging the reliability of the witnesses' findings.  A mirror image would itself be admissible as evidence.  Under the Federal Rules of Evidence, "a duplicate is admissible to the same extent as an original."  Fed. R. Evid. 1003.  The forensic imaging process is used to obtain an exact copy of the data on a piece of media by copying all of the data present on the original device.  Because a forensic mirror image is an authentic and verifiable reproduction of the original item, it satisfies the standards of the Rules of Evidence as an admissible duplicate.  *See United States v. McNealy*, 625 F.3d 858, 867 (5th Cir.

---

[7]      While the Government maintains that this witness is a fact witness, to the extent the defendant may argue that she should be considered an expert, Federal Rule of Evidence 702 governs the admissibility of expert witness testimony, providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A trial judge has broad discretion to admit or excuse expert testimony under this Rule. *United States v. Amin*y, 15 F.3d 258, 261 (2d Cir. 1994); *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Diaz*, 878 F.2d 608, 616 (2d Cir. 1989). A judge's determination to admit such evidence will be overturned only if "manifestly erroneous" or an "abuse of discretion." *Gen. Elec. Co. v. Joiner*, 522 U. S. 136, 142 (1997); *Tutino*, 883 F.2d at 1134; *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985).

2010) (holding that "forensic imaging process" created a "duplicate" that was admissible under Rule 1003).

The Government anticipates that Ms. Jasinski may also discuss certain print-outs of information derived during the forensic examination process.  She will be prepared to authenticate the documents and describe the process by which they were created.  Such print-outs are not hearsay because "nothing 'said' by a machine is hearsay."  *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) (quoting 4 Mueller Kirkpatrick, Federal Evidence § 380 at 65 (2d ed. 1994)) (citing cases).  Moreover, they are admissible as original documents.  *See* Fed. R. Evid. 1001(d) ("For electronically stored information, 'original' means any printout – or other output readable by sight – if it accurately reflects the information.").

### E.    Defendant's Statements to Others

The Government will offer as evidence at trial certain statements made by the defendant to others, including B.L. (For example, the defendant admitted to B.L. that he could penetrate his penis further into one of his victims than he could the other.)  These statements are not hearsay because they constitute party-opponent admissions under Federal Rule of Evidence 801(d)(2). *See, e.g., United States v. Meskini*, 319 F.3d 88, 93 (2d Cir. 2003); *United States v. Inserra*, 34 F.3d 83, 93 (2d Cir. 1994).  The defendant may not put in additional out-of-court statements made by him because such statements are hearsay when offered by defendant.  Fed. R. Evid. 801(d)(2); *United States v. Ortega*, 203 F.3d 675, 681-82 (9th Cir. 2000) (defendant prohibited from eliciting his own exculpatory statements during cross-examination of government agent); *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) ("[A] defendant cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination.").

### F.      Chain of Custody

An uninterrupted chain of custody is not a prerequisite to admissibility of an exhibit. *United States v. Jackson*, 345 F.3d 59, 65 (2d Cir. 2003).  "Breaks in the chain of custody do not bear upon the admissibility of evidence, only the weight of the evidence".  *Id.* citing *United States v. Morrison*, 153 F.3d 34, 57 (2d Cri. 1998) (internal citations omitted).  "If the trial judge is satisfied that in reasonable probability the evidence has not been altered in any material respect, he may permit its introduction."  *Olson*, 846 F.2d at 1116 (quoting, *United States v. Aviles*, 623 F.2d 1192, 1198 (7th Cir. 1980)).

Federal Rule of Evidence 901(a) provides that:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Proof of the connection of an exhibit to the defendant may be made by circumstantial evidence. *United States v. Mendel*, 746 F.2d 155, 167 (2d Cir. 1984); *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982); *United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir. 1975). See *United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir. 1983).  "[T]he prosecution need only prove a rational basis from which to conclude that the exhibit did in fact belong to the [defendant]." *United States v. Mendel*, 746 F.2d at 167; *United States v. Natale*, 526 F.2d at 1173. "The ultimate question is whether the authentication testimony is sufficiently complete so as to convince the court of the improbability that the original item had been exchanged with another or otherwise tampered with." *United States v. Mendel*, 746 F.2d at 167; *United States v. Howard-Arias*, 679 F.2d at 366; *United States v. Grant*, 967 F.2d 81, 83 (2d Cir. 1992).

### G.      <u>Arguing Penalties</u>

Absent extraordinary statutes requiring the jury to participate in sentencing determinations, the *sole* function of the jury is to determine guilt or innocence.  Punishment is within the exclusive province of the Court.  *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970); *Chapman v. United States*, 443 F.2d 917, 920 (10th cir. 1971).

As such, it is improper for a party to elicit evidence that would allow the jury to speculate as to the punishment a defendant faces if convicted.  *United States v. Feuer*, 403 Fed. Appx. 538, 540 (2d Cir. 2010)(unpublished)(absent exceptional circumstances,[8] "a defendant has no legal right to introduce evidence or argument regarding sentencing consequences."); *United States v. Cook*, 776 F.Supp. 755, 756-57 (S.D.N.Y. 1991) ("The function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear or prejudice.  Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function.")(citations omitted).  *See also United States v. Pabon-Cruz,* 391 F.3d 86 (2d Cir. 2004)

It is proper for the court to interrupt any arguments relating to punishment or appeals for mercy, *see United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir.1971), *Gretter v. United States*, 422 F.2d 315, 319 (10th Cir. 1970), and some cases have held that the Court is required to do so.  *See United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971); *May v. United States*, 175 F.2d 994, 1010 (D.C. Cir. 1949); *see also United States v. Young*, 470 U.S. 1, 13 (1985)(stating

---

[8]     The Court of Appeals in *Feuer* cites to *Shannon v. United States*, 512 U.S. 573, 579 (1994), for an explanation of what "exceptional circumstances" would be.  Shannon's holding was that there is no requirement to give a jury instruction about the consequences of a not guilty by reason of insanity verdict.  In so holding, however, the Supreme Court recognized that "an instruction of some form may be necessary under certain limited circumstances. If, for example, a witness or prosecutor states in the presence of the jury that a particular defendant would 'go free' if found NGI, it may be necessary for the district court to intervene with an instruction to counter such a misstatement.")

that the "better course" would have been for the trial judge to interrupt defense counsel's improper argument rather than leaving it for the prosecutor to address on rebuttal).

To allow the jury to be swayed by arguments regarding possible punishment would be to permit them to violate their oath not to allow their verdict to be affected by sympathy. *See United States* v. *Del Toro*, 426 F.2d at 184 ("'To inform the jury (concerning) matters relating to disposition of the defendant, tend to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.'") quoting *Pope v. United States*, 298 F.2d 507 (5th Cir. 1962).

In short, counsel may not seek to inflame the prejudices of the jury or conjure up sympathy for the defendant by referring to the potential sentences and collateral consequences the defendant would face upon conviction.