IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   5:16-CR-320 (DNH) |
| ) | |
| ) | **GOVERNMENT'S RESPONSE TO THE** |
| ) | **DEFENDANT'S MOTION IN LIMINE** |
| **v.** ) | **RELATING TO THE ADMISSION OF** |
| ) | **KIK CHATS** |
| ) | |
| ) | |
| **STACEY J. LAPORTE, JR.** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, submits this response to the defendant's motion *in limine* requesting the preclusion of Kik communications, alleging that they have not been sufficiently authenticated. The motion to preclude is premature, and the Court accordingly denied it without prejudice. However, the Court also ruled that the Government will be limited in our ability to discuss this anticipated evidence in our opening statement. As a result, the Government asked for leave to ask the Court to reconsider its ruling, and to provide briefing on (1) authentication of the Kik chats, and (2) the extent to which we should be able to refer to this evidence during opening statement. The Court granted that request, and we file this brief in response.

**I.    Authenticating the Kik Chats**

The Government, in our case in chief, will seek to introduce Kik chat messages between the defendant and others. The messages were recovered from five different devices seized in this matter. The Government will present sufficient authentication evidence, such as testimony from

1

the examiner who extracted the chat messages from the devices, testimony from participants in the conversation, unique content, and other circumstantial and direct evidence that will sufficiently prove that the defendant was a participant in each of the proffered chats.

### 1.     Chats with Mackenzie Bailey

Some of the chats the Government will seek to introduce are chats recovered from a laptop computer belonging to Mackenzie Bailey.  Forensic testimony will show that the chats were a backup from an iPhone that had been synched to the computer.  Bailey will testify that the computer is hers, and that on the date the recovered chats began, she had obtained an iPhone that she on occasion synched to the laptop computer.  She will further testify that she was one of the participants in the conversations the Government intends to introduce, and that defendant Stacey LaPorte was the other participant.  Bailey lived with LaPorte for two years, texted with him often, if not daily, and knew him to use multiple Kik usernames, including the username "fastfsmily25." Other witnesses will also testify that fastfsmily25 was a username they knew LaPorte to use, and that it was a reference to his fascination with the "Fast and Furious" movies.  Chats the Government seeks to introduce through Bailey, she will testify, occurred while she and LaPorte were both in the home they shared, and that it was often his practice to text or chat with someone even if they were in the same location.  Moreover, the content of the chats combined with Bailey's testimony will irrefutably identify the defendant as the party fastfsmily25.  For example, during one of the chat conversations, fastfsmily25 asks Bailey to abuse V-1 and send pictures to him of that abuse. The chats between Bailey and fastfsmily25 show that Bailey complies.  Thereafter, fastfsmily25 tells Bailey to bring V-1 in to him.  Bailey will testify that as a result of this chat, she brought V-1 into the next room, where LaPorte was waiting, and that he then sexually abused the baby. Additionally, the Government will produce an image sent to Bailey from fastfsmily25, recovered

from this device, in which Bailey and LaPorte exchange "selfies," that is to say: fastfsmily25 sent a picture of himself to Bailey. The picture is of LaPorte.

### 2. Chats with V-3 on Bailey's Phone

Other chats the Government will seek to introduce are messages between LaPorte and V-3. These chats were recovered from a Samsung cellular telephone belonging to Mackenzie Bailey. V-3 will testify that she was in the defendant's residence with him when he gave this phone to her and asked her to chat with him using Kik. The username used by the defendant during this encounter was also fastfsmily25. V-3 and V-2 will testify that the defendant was in the same apartment with them during this chat, in which LaPorte bartered with the children over chat (cigarettes for sexual acts with one another) and directed V-3 to commit certain sexual acts on V-2, produce images of the acts, and send them to LaPorte. The children complied. Later chats that same day on this same device show an image of V-2, sent to fastfsmily25 at his request, depicting V-2 asleep in the defendant's home using a comforter seen, and photographed there days later by police during execution of a search warrant. Additionally, Bailey will testify that other chats recovered from this phone later the same day were between herself and LaPorte, in which he attempted to have her sexually abuse V-2. She will explain that she became so upset with the defendant's constant requests for her to engage in this activity that she broke that phone the same day.

### 3. Chats with Hillary Trimm and Banx75

Recovered from an LG phone witnesses will identify as belonging to and used by the defendant, are Kik chats in which the defendant uses the username PROUDDADDY3_15_16. Witnesses will testify that 3-15-16 is the date of birth of one of the defendant's biological children, and that the Kik account was created two days after her birth, using an LG android phone.

Additionally, Hillary Trimm will identify chat messages between herself PROUDDADDY3_15_16, in which she and the defendant discussed their child, where she sent an image of the baby's hand to LaPorte, and in which she and the defendant exchanged "selfies." These images are recovered, and the selfie sent by PROUDDADDY3_15_16 is LaPorte, depicted holding a phone that by all appearances is the LG from which the chats were recovered. Having thus established that LaPorte is PROUDDADDY3_15_16, the Government will also submit a chat, recovered from this same device, between LaPorte and a user named banx75. During this chat, PROUDDADDY3_15_16 tells banx75 that he will send pictures of his "sister" to banx75 in exchange for "extrem[e] baby pics." As a result, banx75 sends two sexually explicit images of infants to LaPorte, who in return appears to complain that the images are not "extreme." This is consistent with other testimony that will be adduced at trial - that LaPorte is interested in extreme sexual acts with infants. Pursuant to Federal Rule of Evidence 414, that other evidence is relevant and admissible to prove the defendant's identity as PROUDDADDY3_15_16 in this exchange, as his request for and receipt of child pornography is a crime of "child molestation" within the Rule. Additionally, the user profile image for PROUDDADDY3_15_16 is the same Superman logo used as the wallpaper on the lock screen of the LG phone from which the chats are recovered. Witnesses will testify that LaPorte has an obsession with Superman. Many recovered images of LaPorte show him in a Superman sweatshirt, and he has a Superman logo tattooed on his hand. Other evidence on this phone, including other text messages and images, provide additional proof that the LG belonged to and was used by LaPorte.

   **4.**  **Text Messages with Jean Merriam**

Jean Merriam and Mackenzie Bailey will identify four text messages sent from Merriam to Bailey's cell phone. These messages were recovered from Bailey's iPhone. Both recall the

4

messages, and their contents.  One of the messages, received by Merriam, and witnessed by Bailey, was from LaPorte, who identified himself as "Stacey" in the message.

### 5. Chats with V-3 on her own phone

The Government may also seek to use certain messages between V-3 and fastfsmily25 that were recovered from V-3's personal phone.  While V-3 was not in the same location as LaPorte during these chats, the content is unique to LaPorte, including references to his biological children.  These chats serve as further corroboration that the defendant is the user of fastfsmily25.  In addition, during chats with V-3, fastfsmily25 sends multiple images to the child, all of which depict Stacey LaPorte, including images of LaPorte wearing a Superman sweatshirt, and images of his naked erect penis in which tattoos unique to Stacey LaPorte are identifiable.

> While the defendant proffers that a more exacting standard is required,
>
> [t]he bar for authentication of evidence is not particularly high. *United States v. Dhinsa,* 243 F.3d 635, 658 (2d Cir.2001). "The requirement of authentication ... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). Generally, a document is properly authenticated if a reasonable juror could find in favor of authenticity. *United States v. Tin Yat Chin,* 371 F.3d 31, 38 (2d Cir.2004). The proponent need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Pluta,* 176 F.3d 43, 49 (2d Cir.1999) (internal quotation marks and citation omitted).
>
> We have stated that the standard for authentication is one of "reasonable likelihood," *id.* (internal quotation marks and citation omitted), and is "minimal," *Tin Yat Chin,* 371 F.3d at 38. The testimony of a witness with knowledge that a matter is what it is claimed to be is sufficient to satisfy this standard. *See* Fed.R.Evid. 901(b)(1).

*United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007).  *See also United States v. Barnes*, 803 F.3d 209, 217 (5th Cir. 2015), *cert. denied sub nom. Hall v. United States*, 137 S. Ct. 691, (2017) ("conclusive proof of authenticity is not required for the admission of disputed evidence.")

The sole case relied upon by the defendant, *United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014) does not hold otherwise. *Vayner* recognizes *Gagliardi*, and reiterates that "[t]he bar for authentication of evidence is not particularly high." *Id*. at 130, *quoting Gagliardi*, 506 F.3d at 151. Moreover:

> *Vayner* is not a blanket prohibition on the admissibility of electronic communications. As the Second Circuit observed, "[e]vidence may be authenticated in many ways" and "the 'type and quantum' of evidence necessary to authenticate a web page will always depend on context." *Vayner,* 769 F.3d at 133. The Second Circuit also expressed skepticism that authentication of evidence derived from the Internet required "greater scrutiny" than authentication of any other record. *Id.* at 131 n. 5.

*United States v. Ulbricht*, 79 F. Supp. 3d 466, 488 (S.D.N.Y. 2015). The Third Circuit took head-on this distinction, between internet and conventional evidence, ruling that "it is no less proper to consider a wide range of evidence for the authentication of social media records than it is for more traditional documentary evidence," and that while social media records may present "some special challenges," the "authentication rules do not lose their logical and legal force as a result." *United States v. Browne*, 834 F.3d 403, 437-38 (3d Cir. 2016), *cert. denied,* 137 S.Ct. 695 (2017).

The lack of authentication to the sole, static, web page introduced in *Vayner* is in no way akin to the multiple levels of authentication here (and the Government is not suggesting that the facts outlined above are an exhaustive list of ways in which the Kik chats can and will be authenticated). In fact, *Vayner* recognizes that authentication may take on many forms, either direct or circumstantial, including "through the testimony of a witness with knowledge that a matter is what it is claimed to be." *Id*. (internal quotation marks omitted); *see also Browne,* 834 F.3d at 412 (upholding the authentication of Facebook chats where, among other things "the four witnesses who participated in the Facebook chats at issue … did not directly identify the records at trial, each offered detailed testimony about the exchanges that she had over Facebook.").

6

Ultimately, "conclusive proof of authenticity is not required and …the jury, not the court, is the ultimate arbiter of whether an item of evidence is what its proponent claims it to be." *Browne*, 834 F.3d at 439, citing *Barnes*, 803 F.3d at 217; *Vayner*, 769 F.3d at 131, and *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)(holding that Facebook pages and accounts were sufficiently authenticated by evidence linking them to the defendants' mailing and email addresses.)

Accordingly, the Government submits that authentication of chat evidence is no different than the authentication of any other documentary evidence a party seeks to admit at trial, and as such, no special conditions, such as an admissibility hearing outside the presence of the jury, or restrictions, such as a preclusion from referring to the evidence in the Government's opening statement, should be imposed.

## II.     Opening Statement

The Government is requesting that the Court reconsider its ruling that the Government not mention the Kik chat evidence in our opening statement. As discussed above, the authentication of this evidence is no different from the foundation necessary to admit any other documentary evidence. Certainly, the Government anticipates that we will lay a proper foundation for all of our evidence, including adequate authentication tying the Kik chats to the defendant. As such, any mention of the Kik chats in opening statements is, like the mention of any other intended evidence, based on a good faith basis of its admissibility.

As the Court recognized, a ruling on the admissibility of the Kik messenger chat logs is premature. "Whether the Government can meet Rule 901's authentication standard with respect to the challenged exhibits is a question best answered at trial. There is simply no basis to prejudge the Government's ability to meet that standard." *Ulbricht*, 79 F.Supp.3d at 488. This is true with

any contested evidence, yet in their opening statements parties always advise juries what they *anticipate* the evidence in the case will show.

As in any case, the Government's opening statement here will be limited to a discussion of what the Government *anticipates* the evidence will show. In regard to the Kik chats, that includes anticipated testimony and evidence that on several different dates, with several different individuals, each of whom will testify at trial, a chat occurred over Kik messenger, some of which reflect criminal activity. The Government will tell the jury that it *intends* to produce evidence, including through the testimony of several witnesses, that the defendant was a party to these Kik chats on each of the relevant dates. More specifically, the Government anticipates that testimony from B.L., Mackenzie Bailey, Hillary Trimm and C.F. will show, beyond a reasonable doubt, that the only conceivable individual behind messages from two Kik messenger login names, "fastfsmily25" and "PROUDDADDY3_15_16," was the defendant. As we have every good faith reason to believe that this evidence is admissible and will be admitted at trial, we should be allowed to tell the jury that this is the anticipated evidence.

"An opening statement is designed to allow each party to present an objective overview of the evidence intended to be introduced at trial." *United States v. Burns*, 298 F.3d 523, 543 (6th Cir. 2002). The Government is well aware of its obligations in that regard. "Although the opening statement should be an objective summary of the evidence reasonably expected to be produced, the prosecutor may not refer to evidence which will be inadmissible or unsupported at trial." *United States v. Millan*, 817 F.Supp. 1086, 1088 (S.D.N.Y. 1993) (citations omitted). "In other words, the prosecutor's opening statement should be confined to a statement of the issues in the case and the evidence the prosecutor intends to offer which the prosecutor believes in good faith will be available and admissible, scrupulously avoiding any utterance that the prosecutor

believes cannot and will not later actually be supported with competent and reliable evidence." *United States v. Thomas*, 114 F.3d 228, 248 (D.C. Cir. 1997) (internal quotation marks and edits omitted). *See Frazier v. Cupp*, 394 U.S. 731, 736 (1969) (Where the opening statement provided "an objective summary of evidence which the prosecutor reasonably expected to produce," there was no error when an anticipated witness refused to testify, recognizing that "[m]any things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance.")

There has been no determination that the Kik chats are inadmissible, and the Government, in all good faith, is confident that we will sufficiently prove the admissibility of these exhibits, and their content. Accordingly, it is proper for the Government to tell the jury what it intends to prove, including reference to the chats and the evidence that will tie the defendant to them, and we should not be precluded from doing so.

## III.     Conclusion

For the reasons set forth above, no special conditions, such as an admissibility hearing outside the presence of the jury, or restrictions, such as a preclusion from referring to the evidence in the Government's opening statement, are required for evidence relating to the recovered Kik chats, and neither should be imposed.

Dated: June 8, 2017

RICHARD S. HARTUNIAN  
United States Attorney

By:     */s/ Lisa M. Fletcher*  
AUSA Lisa M. Fletcher  
Bar Roll No. 510187

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
UNITED STATES OF AMERICA

Case No.  5:16-CR-320 (DNH)

v.

STACEY J. LAPORTE, JR.,


Defendant.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2017, I filed the **GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION IN LIMINE RELATING TO THE ADMISSION OF KIK CHATS** with the Clerk of the District Court and sent copies of said documents via ECF to Randi J. Bianco.

*/s/Paula D. Briggs*
Paula Briggs
Lead Legal Assistant